UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

Case No. 10-20607
Honorable David M. Lawson

v.

ROLANDO MALDONADO,

          Defendant.
_____/

## ORDER DENYING DEFENDANT'S REMAINING MOTION TO SUPPRESS STATEMENTS

On January 10, 2011, the Court held a hearing on three motions to suppress evidence and statements filed by the defendant. From the bench, the Court denied the defendant's motions to suppress evidence recovered from the search of a van and a residence, and granted in part and took under advisement the defendant's motion to suppress statements. The Court permitted the parties to submit supplemental briefs, which have been received.

The hearing testimony established that the Drug Enforcement Administration (DEA) began investigating the defendant and an unnamed organization with which he supposedly was involved in March 2008. Through this investigation, DEA agents learned that the defendant and his organization trafficked in cocaine in the Detroit metropolitan area.

On September 29, 2010, as part of this investigation, DEA agents conducted surveillance of 2327 Sharon Street in Detroit, which was an occasional residence of the defendant and owned by his girlfriend, Adrianna Feijoo. The agents saw the defendant and Feijoo arrive at the house in a gray minivan at 3:00 p.m. and then enter the building. At 3:30 p.m., the couple left the house, with Feijoo carrying a white bag, and got back in the van. In the interim, the agents ran a Law

Enforcement Information Network (LEIN) query on the gray minivan and found that the plates were registered to a 1998 Chevrolet Venture, which constituted a misdemeanor violation of Mich. Comp. Laws § 257.256(1) ("A person shall not carry or display upon a vehicle any registration certificate or registration plate not issued for the vehicle . . . ").  The gray van drove away from 2327 Sharon Street before Special Agent Louis Scirri and Dearborn Police Corporal George Zemnickas stopped the van at 3:40 p.m.  The agents justified the traffic stop on the grounds of the misdemeanor license plate violation.  However, Scirri also received a tip earlier that same day from Feijoo herself that the defendant was up to something.

Scirri and Zemnickas were in separate vehicles, and when they stopped the van, they pulled their cars in front and behind so as to block the van's ability to move.  Zemnickas approached the driver's side of the van and asked Feijoo to step out of the vehicle and walk back to the officer's car.  She did as asked and consented to a search of the van.  This search revealed $7,000 in a ziploc bag in Feijoo's purse and cocaine paraphernalia in the white bag.

At the same time, agent Scirri approached and questioned the defendant, who was seated in the passenger's seat.  The defendant was not carrying identification; in response to questioning, he answered that he lived "here and there."  According to the government, the defendant made several misrepresentations about where he and Feijoo had been prior to the traffic stop.  The defendant denied that there were any guns, drugs, or large sums of money in the van and specifically denied that he had a gun on his person.  However, he admitted that he had a pocket knife in his pants, which Scirri recovered.  At that point, Scirri decided to handcuff the plaintiff "for officer safety" because he had previously been carrying a knife (which, according to the government, was now in the

agent's possession) and because he had a criminal history that included aggravated assault and narcotics convictions.

Scirri left the defendant handcuffed in the minivan and walked back to his vehicle to speak with Zemnickas and Feijoo. Feijoo eventually consented to the search her home at 2327 Sharon Street and signed a consent form. The topic of the search and the items recovered are the subject of this Court's previous order. It is the continued detention of the defendant — which led to additional statements by him — that is the subject of the motion that remains pending.

There were three separate questioning sessions, and the defendant challenges the propriety of all three. The first occurred at the traffic stop between 3:40 p.m. and 4:30 p.m. on September 29, 2010. The second occurred the same day at about 8:00 p.m. when the defendant was taken to DEA headquarters in Detroit. The third occurred the next day when the defendant was transported to duty court.

The Court has determined that the defendant was "in custody" when the officers questioned him the first time following the traffic stop. He was a passenger in the van, the progress of the van was blocked by the police officers' cars, and the defendant was frisked and handcuffed. He was not given his Miranda warnings, and the Court held that those statements must be suppressed. The defendant argues that the other statements were the product of an illegal seizure when the traffic stop was extended for an unreasonable time, and in any event after the defendant received Miranda warnings, he asked for counsel. Therefore, he contends, all his statements should be suppressed.

According to the evidence developed at the hearing, the government justified its continued detention of the defendant on the authority of an outstanding arrest warrant agent Scirri discovered. He ran a LEIN search and found that the defendant had an outstanding warrant for a traffic-related

misdemeanor.  Although he was already in handcuffs, Scirri "formally" placed the defendant under arrest at that time and moved him from the van to the backseat of Scirri's vehicle, without any resistance from the defendant.  Around this time, DEA Supervisory Special Agent Tim Plancon and Special Agent Debra Lynch arrived.  Scirri testified that he read the defendant his Miranda rights from the DEA's standard form, and Lynch's testimony confirmed that advice.

    The question whether the officers could justify the continued detention and subsequent questioning of the defendant on the basis of the outstanding arrest warrant was the subject of the recent Sixth Circuit decision in *United States v. Gross*, 624 F.3d 309 (6th Cir. 2010).  In that case, the police came upon the defendant in a vehicle parked in a high crime area of public housing near Cleveland in the early morning hours.  The car engine was running and the defendant was slumped down in the right passenger seat; but there was no evidence of a violation of law, and the license plate check turned up no suspicious information.  The police, nonetheless, obstructed the path of the defendant's car with their vehicle, and they proceeded to question the defendant.  The questioning yielded information about the defendant's identity, after which a record search turned up an outstanding arrest warrant.  The arrest eventually led to the discovery of a gun, and the defendant thereafter made incriminating statements, all of which he moved to suppress.  The court discussed the "three types of permissible encounters between police and citizens" and the levels of information that are required for each.  *Id.* at 314-15.  These consist of a consensual encounter, an investigative detention, and an arrest; and although the first requires no level of suspicion on the part of the police, more information is required as the encounters become more coercive.  *See United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000).

The *Gross* court determined that when the police blocked Gross's car to investigate what he was doing, they exceeded the boundaries of a consensual encounter and effectuated an investigative detention, for which "reasonable articulable suspicion of criminal activity" was required. *Gross*, 624 F.3d at 314-16. The court explained that "a consensual encounter becomes a seizure when 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Id.* at 315 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). The court concluded that the police did not have the requisite level of suspicion to detain Gross as a passenger in the vehicle, so the subsequent discovery of the arrest "warrant during that stop will not constitute an intervening circumstance" justifying the detention and the discovery of incriminating evidence that followed. *Id.* at 320.

In this case, the defendant relies on *Gross* for the proposition that he was detained without proper justification, and the discovery of the arrest warrant could not validate his illegal detention after the fact. The argument raises some good points. The Sixth Circuit has held that the scope of reasonable police conduct during a traffic stop is governed by the rules set forth in *Terry v. Ohio*, 392 U.S. 1 (1968), even where probable cause existed at the time of the stop. *United States v. Everett*, 601 F.3d 484, 488 & n.4 (6th Cir. 2010) (citing *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). The Sixth Circuit explained:

> To qualify as reasonable seizures under the Fourth Amendment, *Terry* detentions must be "limited in [both] scope and duration." *Florida v. Royer*, 460 U.S. 491, 500 (1983). . . . Under *Terry*'s duration prong, a stop "must . . . last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500. Under its scope prong, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.". . . *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (stating that stop must be "reasonably related in scope to the circumstances which justified the interference in the first place").

*Id.* at 488-89 (citations omitted). The police must act promptly to either confirm or dispel the suspicion that provoked the initial stop. *Sharpe*, 470 U.S. at 686 (stating that courts must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly . . . .").

However, in this case, agent Scirri was working from a tip by a known informant — Adrianna Feijoo, the driver of the van — that the defendant was up to no good. Scirri had been investigating the defendant for drug trafficking over several months. Based on this information, Scirri believed that the defendant was involved in drug-related activity, and he stopped him to investigate. Scirri candidly testified at the hearing that although the license plate violation technically justified the traffic stop, Scirri wanted to follow up on his tip from Feijoo by investigating the defendant.

The events that followed, which consisted of interviewing Feijoo, running a LEIN check on the defendant, and discovering an arrest warrant, all took place within about an hour. That amount of time is a bit large for a traffic stop, but during the encounter a large amount of cash and cocaine paraphernalia were found in the van, which justified further investigation. Based on the totality of circumstances, the Court concludes that the agents' detention of the defendant up to the point of discovery of the outstanding arrest warrant was reasonable in duration and scope, and it was supported by "specific, articulable facts that gave rise to a 'reasonable suspicion' that the [defendant] was engaged in criminal activity." *Gross*, 624 F.3d at 315 (quoting *Terry*, 392 U.S. at 21). The stop and detention, therefore were not illegal, and they do not furnish a basis to challenge admissibility of the subsequent statements the defendant made.

The other ground upon which the defendant seeks to suppress his statements is the failure of the agents to honor his request for a lawyer. All the government witnesses who testified — Louis Scirri, Timothy Plancon, and Deborah Lynch — insist that the defendant never made a request for counsel. The defendant testified that he made such a request on a number of occasions that day. The resolution of the question does not call up a dispute over the applicable law. "An accused in custody, 'having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him,' unless he validly waives his earlier request for the assistance of counsel." *Smith v. Illinois*, 469 U.S. 91, 94-95 (1984) (quoting *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). Instead, the question is one of credibility.

The defendant maintains that his version of the events should be accepted because he demonstrated his familiarity with the law when he acknowledged that he was disqualified by his prior felony conviction from possessing a firearm; he refused to sign a consent form allowing a search of the Sharon Street house without consulting a lawyer; a lawyer who had represented the defendant in the past testified that he exhorted the defendant to insist on having a lawyer present if the police questioned him; the defendant asked why he was not taken immediately to a police precinct upon his arrest; and he denied living at the Sharon Street house or remained silent when asked where he lived.

The government counters with other circumstantial evidence that supports an inference that the defendant agreed to speak without a lawyer, and he never asked for one. The government points to the defendant's volunteered admission that drugs found at the Sharon Street house belonged to him when agent Placon told the defendant he was under arrest for drug and gun possession; the

defendant made incriminating statements during an outgoing jail telephone call despite warnings that the conversations were recorded; and the defendant signed an affidavit for federal immigration officials in 2009 without a lawyer present after he was told he was entitled to have one present.

Of course, none of these circumstantial occurrences conclusively resolves the question. Countless suspects have confessed to crimes more serious than the ones involved in this case without asking for an attorney, even after receiving advice that they were entitled to a lawyer. After viewing the witnesses testify and considering their relative interests in the outcome of the hearing, the Court is satisfied that the testimony of government witnesses Scirri and Lynch is credible and accepts it. The Court discounts the testimony of the defendant that he made a clear request for a lawyer. There is no violation of *Miranda*'s requirements concerning the request for counsel. The Court finds that there is no basis to suppress the remainder of the defendant's statements.

Accordingly, it is **ORDERED** that the balance of the defendant's remaining motion to suppress statements following the administration of Miranda warnings at the scene of the traffic stop [dkt #14] is **DENIED**.

                                                s/David M. Lawson
                                                DAVID M. LAWSON
                                                United States District Judge

Dated: February 15, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 15, 2011.

                                    s/Deborah R. Tofil
                                    DEBORAH R. TOFIL